**In re MASON C. JONES CO.**

No. 67212.

United States District Court
N. D. Ohio, E. D.

Jan. 30, 1953.

2.   Anderson-Friberg, Inc. v. Justin R. Clary & Son, D.C., 98 F.Supp. 75.

844

To the Honorable Judges of the United States District Court, for the Northern District of Ohio, Eastern Division, sitting in Bankruptcy:

I, William B. Woods, Referee in Bankruptcy, in charge of the above proceedings, do hereby certify:

That in the course of the proceedings, Allan Johnston, Trustee of this Bankrupt, filed his Application for an Order to Show Cause on Felix Arment of Cuyahoga Falls, Ohio, to turn over chattel property or bankrupt, or in default thereof, to pay its reasonable value to said Trustee.

Upon hearing had, the application for show cause order was granted on November 10, 1952, that the respondent turn over certain chattel property, or in lieu thereof pay the value of said property wrongfully converted, in the amount of $725.

Thereafter, being aggrieved thereat, Respondent Arment filed his Petition for Review of the Order of Referee on November 20, 1952.

Findings of Fact

(1) That Allan Johnston is the duly elected, qualified and Acting Trustee in Bankruptcy of Mason C. Jones Company, and adjudicated bankrupt on August 19, 1950.

(2) That the Creditors' Petition against Mason C. Jones Company was filed July 12, 1950, and the same day Clair E. Whitmer was appointed Receiver, adjudication filed on August 19, 1950; schedules were filed December 12, 1950, by the Receiver after bankrupt had failed to prepare and file same; and the First Meeting of Creditors

was held January 3, 1951, at which Allan Johnston was elected Trustee by the creditors.

(3) That Clair E. Whitmer, Receiver, on or about July 12, 1950, took possession of bankrupt's property, at its place of business, on the premises at 2415 Front Street, Cuyahoga Falls, Ohio, which were owned and controlled by Lindarm Company, as landlord, of which Respondent Felix Arment was then Vice President and Manager of the premises rented and occupied by bankrupt.

(4) That upon his appointment, the keys to the premises were surrendered to the Receiver and he posted notice on the premises that he was Receiver of said Alleged Bankrupt under the order of the U. S. Court, with his address; That he locked the premises with new locks in the presence of Kenneth M. Pearce, Treasurer of bankrupt corporation, who advised the Receiver that all of the property on the premises belonged to bankrupt.

(5) That after several visits to the premises, when he later visited the premises in the middle of August, he found his locks removed from the doors and other locks in their place;

(6) That the Receiver had conferred with the landlord's attorney about the ownership of a typewriter in the premises, and there was no question about the ownership of all other property on the premises belonging to bankrupt.

(7) That Respondent Felix Arment sometime in August, 1950 (Transcript of May 11, 1951, pp. 5 and 10) broke the locks and entered the premises, and that Fire Chief Shafer of Cuyahoga Falls, Ohio, was in the premises with said Arment on August 11; and that Arment, as landlord, was ordered to clean the premises, so there would be no fire hazard; that the Fire Chief was there again on August 20 and found that his order had been carried out (Transcript pp. 24–27), and that when he inquired of Arment who had charge of the place, he saw no notice of the Receiver's possession in sight, and the Chief testified that he did not know who had charge of the establishment (Transcript p. 27);

(8) That the value of the property missing from the premises, after Respondent Arment broke the locks and established himself in possession, was: Neon signs $300, typewriter $25, Checkwriter $100, tools $100, balance of equipment $200, total $725. (Transcript August 14, 1952, pp. 5–6).

(9) That said Respondent Arment had no right of possession or right in and to said property so wrongfully detained from the officers of the Bankruptcy Court.

(10) That said property, or its money value of $725, has never been returned to the officers of the Bankruptcy Court.

## Conclusions of Law

(1) Pursuant to Bankruptcy Act, §§ 2, sub. a(7, 15), 23, sub. b and 70, sub. a, 11 U.S.C.A. §§ 11, sub. a(7, 15), 46, sub. b, 110, sub. a, the Bankruptcy Court has jurisdiction to compel parties to turn over property which has been in the actual or constructive possession of the Court.

(2) The property here was in the actual possession of an officer of this Court, namely the Receiver in Bankruptcy, when the property was wrongfully taken from the Court's possession.

(3) The jurisdiction of the Bankruptcy Court, once attaching to specific property, is not later lost if the possession of the property passes to strangers or is taken from the Court's possession.

(4) The Court has summary jurisdiction to compel turnover of the property which was once in its possession.

(5) The Court has summary jurisdiction and power to compel Felix Arment, if he can not return specific property, to return or account for its value.

## Memorandum

So the question becomes that after Respondent Arment had wrongfully broken the locks on the premises in the custody of the Bankruptcy Court, and chattels of bankrupt to the value of $725 had disappeared, what remedy or redress has the Trustee on behalf of creditors of the bankrupt estate?

The question is here raised, as to the jurisdiction of the Bankruptcy Court to hear this turnover proceeding. The pertinent sections in the Bankruptcy Act are:

Bankruptcy Act, § 2, sub. a (7), 11 U.S.C.A. § 11:

"The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity [and in admiralty] as will enable them to exercise original jurisdiction in proceedings under this act, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to * * *

"(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided * * *

"(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act: Provided, however, That an injunction to restrain a court may be issued by the judge only; * * *."

Bankruptcy Act, § 23, sub. b:

"Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them, if proceedings under this act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67 and 70 of this act. * * *"

Bankruptcy Act, § 70, sub. a:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition."

Whether the Bankruptcy Court has jurisdiction on this turnover proceeding by the Trustee depends upon whether the

Receiver or Trustee had possession, actual or constructive, of the property, which is the subject matter of the proceeding.

█ The rule is stated in Collier on Bankruptcy, 14 Ed., Vol. II, p. 468, to be that upon the filing of the Petition in Bankruptcy, all the property of the alleged Bankrupt passes at once into the custody of the Bankruptcy Court, and becomes subject to summary jurisdiction to obtain actual possession, if that is necessary, which brings into play the doctrine of constructive possession; which is also discussed by the author.

This is not important here, as the Receiver had taken actual possession of the property, placed new locks on the doors, and the Respondent Felix·Arment testified that he knew of the Bankruptcy and that the Receiver had taken possession of the property on the premises, of which he was Agent and Vice President of the Landlord.

██ If reliance is to be had here on constructive possession, the Receiver here had taken possession of the property, which was wrongfully taken from his custody·and was or is held by Arment without any rightful claim thereto. See Collier on Bankruptcy, 14 Ed., Sec. 23.05, p. 474; also Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770, 2 Am.BankrRep.,N.S., 912. Further, in re Retail Stores Delivery Corporation, D. C., 5 F.Supp. 892, 24 Am.Bankr.Rep.,N.S., 15, that where the jurisdiction once attaches, this is not lost later on, if the possession of the property passes to strangers without order of the Court while the Bankruptcy proceeding is still active. The filing of the Bankruptcy Petition has the effect of an attachment and injunction and the property is *in custodia legis*.

The wording of Section 70, sub. a of the Bankruptcy Act would seem sufficient, which is that the Trustee of the estate of a bankrupt upon his appointment and qualification is vested by operation of law with the title of the bankrupt as of the date of filing of the Petition in Bankruptcy. So here this Trustee brings this action against respondent for property wrongfully taken from the premises while his predecessor,

the Receiver, had custody of the property in the bankruptcy proceeding.

█ The law to be applied here is the same as in the reported case In re Times Square Auto Supply Company, 2 Cir., 47 F.2d 210, 212, 17 Am.Bankr.Rep.,N.S., 579, certiorari denied, Bank of United States v. Irving Trust Co., 283 U.S. 856, 51 S.Ct. 649, 75 L.Ed. 1463, 17 Am.Bankr.Rep., N.S., 669, where Swan, Circuit Judge, said: " * * * property of the bankrupt which is in his possession at the filing of the petition, or comes into his possession thereafter, is ·constructively in the possession of the bankruptcy court and subject to its summary process; and that any person who· takes such property—certainly if he has notice of the pending petition, and probably even if he has not, and pays no present consideration—is likewise subject to a summary order to return it or to account for its value."

The rule to be applied here is found in Collier on Bankruptcy, Vol. 2, p. 474, as follows: "It has been said that 'constructive possession occurs where the property * * * is delivered to the Receiver or Trustee but thereafter is wrongfully withdrawn from his custody' ".

Judge Westenhaver applied this rule In re Schilling, D.C., 264 F. 357, 45 Am.Bankr. Rep. 147, where he approved a Finding of Referee in this District, where bricks had been taken from the bankrupt's estate and the Court on review affirmed the order of the Referee, assessing damages for the value of the property converted.

The finding was, and an order was so entered, fixing the value of the property wrongfully converted by Respondent.

Herewith I hand up for consideration of your Honors, the following:

1. Application for Order to Show Cause

2. Order to Show Cause

3. Transcript of Testimony of May 11, 1951

4. Transcript of Testimony of August 14, 1952

5. Brief in Support of Order to Turn Over Property

6. Brief in Answer to Brief Filed by Attorneys for Trustee

7. Reply Brief of Trustee

8. Journal Entry of November 10, 1952

9. Petition for Review of Order of Referee

10. Trustee's Suggested Findings of Fact and Conclusions of Law

James Alpeter, Akron, Ohio, for bankrupt.

Allan Johnson, Harold W. Slabaugh and Clair E. Whitmer, Akron, Ohio, for trustee.

Alan Sophrin Cuyahoga Falls, Ohio, for Felix Arment, respondent.

## On Petition for Review

JONES, Chief Judge.

 In this review the transcript of the testimony of petitioner expressly supports the finding of the Referee that he, the petitioner, gained entrance to the premises of the bankrupt by breaking the lock on the door. The Receiver had applied the lock following his appointment. The Bankruptcy Court had taken possession and control of the premises and the property therein, and, as I believe, had full power to preserve and protect its possession by summary action.

Petitioner further testified that thereafter he applied his own lock, but that someone broke his lock later,—although he did not know what, if anything, was stolen.

Pearce, a former officer of the bankrupt (Treasurer), supports the finding as to the chattels in the premises; that there was a bankruptcy sign in the window and that the Receiver had placed the lock upon the door. There is some testimony by petitioner that certain of the chattels were where the Trustee could get them but there is nothing to indicate that any of the property, either in the building when the petitioner broke the Receiver's lock, or property which petitioner said the Trustee could "get any time", ever was clearly identified, and certainly never appraised.

 While I must conclude from the information in the transcript that the bankruptcy was not handled very expeditiously, and probably some burden for the loss of chattels must be attributed to the failure of the Court's officer more promptly to appraise, protect and preserve the property in the premises of the bankrupt,—yet the petitioner's careless disregard of the authority and possession of the Bankruptcy Court, coupled with his failure to account for assets in the premises, and those which he admitted he removed, places upon him the responsibility of producing such property or its approximate value.

Upon a full consideration of the record, certificate of review and briefs, confirmation of the Referee's findings and order must follow.

If and when the matter of allowance to Receiver and his attorney is before the Referee, the remarks herein concerning the lack of expedition and care in connection with the preservation of assets of the bankrupt should receive examination and consideration.

The petition for review will be dismissed.